Filed 10/20/14  State Compensation Fund v. Notis Enterprises CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| STATE COMPENSATION INSURANCE FUND,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NOTIS ENTERPRISES, INC.,<br><br>Defendant and Appellant. | B218667<br><br>(Los Angeles County<br>Super. Ct. No. BC365647) |

APPEAL from an order of the Superior Court of Los Angeles County, Mary Thornton House and Richard E. Rico, Judges.  Affirmed.

Lisitsa Law Corporation and Yevgeniya Lisitsa, Peter L. Weinberger & Associates and Peter L. Weinberger, for Defendant and Appellant.

Sheppard, Mullin, Richter & Hampton, Fred R. Puglisi, James M. Burgess, and Dylan J. Price, for Plaintiff and Respondent.

_____

Notis Enterprises, Inc. appeals from a default judgment in favor of respondent State Compensation Insurance Fund. The judgment was entered after terminating sanctions were imposed for discovery violations. We conclude terminating sanctions were proper, and the judgment is supported by substantial evidence. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

Respondent is a division of the Department of Industrial Relations. (Ins. Code, § 11773; Lab. Code, § 56.) It issues workers' compensation policies to employers based on the employer's annual gross payroll, the job classifications or nature of the work performed by employees, and the loss experience and payroll of the employer over time. The employer provides respondent with information regarding its payroll and the nature of the work performed by the employees at the outset of the policy, on a periodic basis during the policy period, and at an audit at the end of the policy year.

In 2004, respondent issued a workers' compensation policy to appellant, a construction company doing business as L & M Construction. The policy covered the period from July 27, 2004 to April 9, 2005 (2004 policy), and was automatically renewable after that. In May 2005, respondent audited appellant to calculate the final premium due for the policy year. The audit references data derived from "1099's" and "DE6's,"[1] notes that "payroll journals do not match DE6," and that "per CPA everyone makes under $18 hr." Appellant did not provide state contractors' licenses and certificates of insurance for its contractors, and payments to them were included in the gross payroll resulting in a $497,265.48 premium due under the 2004 policy.[2]

_____

[1] These references are to Internal Revenue Service Form 1099-MISC and California Quarterly Wage and Withholding Report DE-6.

[2] Independent contractors are presumed to be employees for purposes of workers' compensation unless the employer provides proper documentation of their status, such as state contractors' licenses, contract agreements, and certificates of insurance. (Lab. Code, §2750.5; *Cedillo v. Workers' Comp. Appeals Bd*. (2003) 106 Cal.App.4th 227, 233 [person employing unlicensed contractor for job that requires license is conclusively presumed to be statutory employer].)

2

After appellant objected to the invoice for that amount, respondent requested documentation supporting the objection. Over 2005 and 2006, appellant provided some additional information and arranged for a reaudit to resolve disputes regarding payments for materials to independent contractors, but the record on appeal does not indicate whether a reaudit resulting in a premium adjustment or settlement was completed at that time.

Upon the expiration of the 2004 policy period, the policy was automatically renewed for another year, from April 9, 2005 to April 9, 2006 (2005 policy). Respondent cancelled the 2005 policy on October 31, 2005 because appellant failed to make premium payments. The cancellation notice listed as outstanding the payment of $495,820.48 under the 2004 policy and "[p]ayroll report with premium for the period" from October 9, 2005 to October 31, 2005.

In August 2006, respondent assigned a claim for $496,394.44, or any amounts due to collect from appellant, to Collecto, Inc. (Collecto). In February 2007, Collecto sued appellant for goods and services sold and delivered, account stated, and open book account, seeking to recover the assigned amount. In July 2007, Collecto propounded its first discovery set, which included form interrogatories, requests for admission, and requests for production of documents. Appellant was asked to admit that the amounts outstanding on the 2004 and 2005 policies were correct, that it received certain documents, and that it did not provide documentation of the independent contractor status of persons included in the audit premium calculation. The request for production sought documents supporting any response other than an unqualified admission; payroll records, DE-6's, and documentation on independent contractors; as well as correspondence with respondent and Collecto. The interrogatories were form interrogatories approved for use in civil cases.

Appellant's response to each of these requests was the same: "Overbroad, overburdensome, vague and ambiguous, irrelevant, seeks information not reasonably calculated to lead to the discovery of admissible evidence." A meet and confer process resulted in supplemental responses in September 2007. Appellant denied several requests

3

for admission, provided non-committal answers to the rest, and added objections to requests that required admitting dates or verifying documents. It agreed to produce documents regarding the status of independent contractors, but it objected to other requests and claimed some of the requested documents were equally available to respondent. The supplemental response to the first set of form interrogatories included some answers and some objections.

In late 2007, appellant produced over 800 documents, including tax and payroll records, correspondence, and receipts. Collecto initially reported that respondent had found these documents insufficient for a comprehensive re-audit. But in February 2008, respondent issued a revised invoice for the 2004 policy. The owed premium amount was reduced to $204,999.44. In June 2008, Collecto requested a prejudgment writ of attachment supported by the declaration of auditor Carolyn Baker who stated she had conducted "a full re-audit" of the 2004 policy based on the documents produced by appellant.[3] The reaudit was attached to the declaration. Ms. Baker's notes on the reaudit indicate she excluded from payroll independent contractors with valid workers' compensation policies. She found some of the receipts produced in discovery were unreadable or did not identify the recipient. Others were outside the audit period, and still others reflected totals not included in the audit. Commissioner Greenberg declined to issue a writ of attachment because he could not determine how Ms. Baker had arrived at the premium amount.

Appellant refused to submit to an audit of the 2005 policy, and in May 2008 respondent invoiced $145,573.09 based on the payroll for the 2004 policy, as allowed by the policy contract.

Also in May 2008, the court granted Collecto's motion to compel the deposition of Mordecai Notis, appellant's president and person most knowledgeable, which originally had been set for February 2008. The deposition was ordered to be completed by July 11, 2008. Appellant and its counsel were sanctioned $3,333. At the court-ordered deposition

---

[3] The date listed on the re-audit, "2/6/07," apparently is incorrect.

in June 2008, Mr. Notis failed to bring any documents and frequently refused to answer questions on the advice of his counsel, Yevgeniya Lisitsa. Ms. Lisitsa interposed repeated objections and abruptly ended the deposition when Collecto's counsel, Bruce Hatkoff, refused to postpone the deposition to allow additional time for document production.

The deposition was resumed in July 2008. Mr. Notis brought some documents provided by his payroll service, but it is unclear from the transcript what was included in those documents since Ms. Lisitsa objected to the request to identify them on the record. Mr. Notis said he had brought DE-6's. When told that the documents included only a summary of quarterly reports, rather than the actual reports, he claimed to have never seen a DE-6. Mr. Notis admitted he did not bring any 1099 forms he had issued to independent contractors and had not looked for such forms.

Mr. Notis variously testified that he had moved offices and had not kept all old records, that his old records were in boxes, that he had a new computer system, and that some electronic records could not be printed out. He testified he was under the impression the case was settled when he paid $10,000 to his insurance broker so that respondent would agree to issue him another policy, but he could not identify any written settlement agreement.[4] Although he claimed the vast majority of payments included in the audit were for products and materials rather than services, Mr. Notis brought no documents to support this claim. He and Ms. Lisitsa insisted appellant already had turned over those documents.

Mr. Notis was of the opinion that only records of wages he paid his employees were relevant to the premium calculation. He did not understand why he had to submit to an audit or produce any additional records since he had submitted payroll information during the policy period. Nor did he understand why he had to "go to depositions" or "to

---

[4] On appeal, appellant cites to a letter from its insurance broker. The insurance broker references a $2,910 premium payment intended to equalize appellant's six-month payroll report in February 2007, close its file, and allow respondent to issue a policy to another company owned by Mr. Notis. The record does not indicate that appellant identified this letter as evidence of its claim of settlement during discovery.

defend that I owe money that somebody just decided to pull out of a hat . . . ." He admitted he had not gone through all his boxed records because that would take "a few weeks," and he was unwilling to spend time looking for information to help respondent "recoup some of the BS claims that [it] sold."

Ms. Lisitsa repeatedly objected to questions and instructed Mr. Notis not to answer. She often ridiculed the questions. When Mr. Hatkoff asked if Mr. Notis knew what a DE-6 form was, Ms. Lisitsa interjected, "No. It's a secret, probably. . . . [¶] That Mr. Hatkoff is hiding from us." When Mr. Hatkoff inquired if Mr. Notis had checked whether documents reflecting payments for products and materials existed, she asked, "Have you looked around the world and determined that the documents ever existed in this lifetime?" At some point in the deposition, Ms. Lisitsa demanded that Mr. Hatkoff clarify respondent's assignment of its claim to Collecto, then abruptly ended the deposition when he referred her to Collecto's discovery responses.

Collecto assigned the claim back to respondent, which substituted in as the plaintiff and filed a second amended complaint for breach of contract under the two policies. In August 2008, the court denied respondent's motion for terminating sanctions, but awarded $3,000 in additional sanctions in favor of Collecto on the ground that appellant and its counsel willfully violated the court's order by failing to attend the deposition and produce documents in a timely fashion, by "stonewalling," and walking out of the deposition. It ordered that all discovery matters be heard by the earlier-appointed discovery referee.

Respondent renoticed Mr. Notis' deposition for September 5, 2008. Appellant objected on various grounds, one of which was that Mr. Notis already had been deposed several times. Meanwhile, the discovery referee allowed the parties to continue with discovery propounded by and against Collecto, but denied appellant's request to compel the deposition of respondent's person most knowledgeable because respondent was not a party to the lawsuit at the time that deposition notice was served. Respondent advised appellant it sought to complete the twice-interrupted deposition of Mr. Notis, which already had been compelled by court order, but appellant insisted on deposing

6

respondent's witnesses first. Respondent demanded that appellant provide dates for the continuance of the deposition or risk sanctions. Ms. Lisitsa replied she did not intend to "spend any more time on these baseless meet and confers" but would be amenable to have her "client go first" if respondent agreed that both parties' witnesses be deposed over a certain number of days without interruption. The deposition was never rescheduled.

Before it substituted out of the case, Collecto had moved to compel further responses to its first discovery set and had propounded a second discovery set based on the reaudit of the 2004 policy, as well as a third set focused on the 2005 policy. On appellant's objection that the second discovery set exceeded the number of allowed requests, Collecto had moved to compel further responses to that set. In his September 2008 report, the discovery referee recommended that the trial court grant the motions to compel further responses to discovery sets one and two and that appellant be warned that evidentiary or terminating sanctions might be imposed if it did not comply by responding fully, candidly, and without objections. The referee recommended that the court impose $6,580 in sanctions against appellant and its counsel for discovery set one and $3,000 for discovery set two. On October 2, 2008, the court approved the report, adopted the referee's recommendations, and set October 20, 2008 as a deadline for further responses. Appellant and its counsel appealed the sanctions order in case No. B213079.[5]

On October 30, 2008, ten days past the deadline for further responses, respondent advised appellant it was in contempt of the October 2 order. In e-mail correspondence in mid-November, Ms. Lisitsa asked respondent for additional time. Appellant offered

---

[5] We affirmed the sanctions order in *State Compensation Insurance Fund v. Notis Enterprises, Inc.* (June 7, 2010, B213079 [nonpub. opn.]). We rejected contentions that the motions to compel were irrelevant, that the assignments between respondent and Collecto were invalid, that the award of sanctions was improper after Collecto had substituted out, that the requests for admission were improper, and that the referee could not address both discovery sets in one report. We deemed abandoned claims regarding the validity of the referee's appointment and the court's adoption of the referee's report without a hearing.

7

supplemental responses to discovery sets one and two in December. In them, appellant refused to admit the authenticity of invoices and correspondence it had received from respondent, claimed it had "no idea" what certain documents were, identified "Responding Party" rather than the names of individuals with knowledge of specific matters, referenced "the entire file" in support of its denials, and produced the same documents it had produced back in October 2007. In January 2009, appellant submitted additional unsigned and unverified discovery responses. Its admissions and denials were prefaced by objections. Appellant continued to evade identifying specific documents and potential witnesses in support of its denial that it owed any money. Instead, it referred to its pleadings and "all documents submitted," and identified the attorneys on both sides as potential witnesses.

Respondent filed a motion for terminating sanctions or, in the alternative, for issue sanctions, monetary sanctions, or an order compelling compliance. The motion was based on appellant's refusal to comply with court-ordered discovery as to sets one and two, to appear for deposition, and to pay sanctions.[6] Appellant filed a two-page opposition, claiming the discovery was vexatious but pointing solely to the request for admission of the original amount in dispute in discovery set one, which had been superseded by the request for admission of the reduced amount in discovery set two. The opposition was accompanied by Mr. Notis's declaration, in which he denied all requests for admission, including requests he had admitted before. Mr. Notis objected to the invoiced amounts, claiming the matter had been settled in 2005, and respondent had treated payments for materials to independent contractors and materials suppliers as labor costs. Attached to the declaration and referenced in it were documents Bates stamped 1-1,560. Mr. Notis declared: "There are no more documents of any other kind or nature that exist[]," and appellant "does not have any more documents or answers to any discovery and will not be producing any other data, or documents that it has already

---

[6] The motion did not pertain to discovery sets three and four or the discovery on appellant's cross-complaint.

8

produced in response to the discovery." He claimed the only documents appellant did not have were DE-6's that had been produced during his deposition.

The discovery referee recommended that the court grant the motion for terminating sanctions. At the hearing on the motion, appellant's attorney conceded that the 1,560 pages of documents were duplicative of the documents produced back in 2007. The referee noted the court already had ruled production of those documents insufficient in substance and form. He credited respondent's representation that, although the audits refer to "source documents" such as 1099 forms, DE-6's, check registries and payroll journals, appellant had not fully produced those documents in discovery. The referee found appellant's discovery responses continued to be dilatory, evasive, lacking a factual basis, and thus violative of the October 2, 2008 order. The referee also found appellant and its counsel interposed "baseless" objections to respondent's attempt to complete Mr. Notis's deposition after having been sanctioned for "stonewalling" and unilaterally terminating it earlier. The referee specifically found Ms. Lisitsa's conduct to have been "intentionally obstructive and very rude," and Mr. Notis's failure to produce documents "willful." The referee noted that appellant had refused to pay prior sanctions and its half share of the referee's fees.[7] He recommended that the court strike appellant's answer and dismiss its cross-complaint, impose $14,895 in sanctions against appellant and its counsel, schedule a prove-up default hearing, and reserve jurisdiction to reallocate the referee's fees. Judge House, to whom the case had been assigned, adopted the referee's recommendation, struck appellant's answer, dismissed its cross-complaint, and entered its default.

Respondent's prove-up was supported by a new declaration by the reauditor, Ms. Baker, who referenced the records on which the original audit had been based, and explained she used information appellant provided about its independent contractors to

---

[7] The referee found additional misconduct in appellant's false assertion of a discovery violation in a motion to compel, and in Ms. Lisitsa's abrupt hanging up during a telephone conference. The referee did not recommend that the court consider respondent's claim that appellant strategically added "a sham Cross-Defendant" or that it filed allegedly frivolous appeals from prior orders.

reduce the premium for the 2004 policy year. Respondent moved to strike appellant's objections to the prove-up on the ground that appellant had no standing to bring them after default. In July 2009, Judge Rico entered a default judgment against appellant for $554,767.41, which included $478,965.63 in damages and interest based on the breach of the 2004 and 2005 policies, $25,394.25 in referee fees, $47,272.34 in unpaid sanctions and interest, and $3,135.19 in costs. The sanctions against appellant's counsel were stricken.

This appeal followed.[8]

## DISCUSSION

### I

Appellant argues the trial court lacked jurisdiction to enter a default judgment during the pendency of the appeal in case No. B213079 because that appeal automatically stayed the trial court proceedings under Code of Civil Procedure section 916.[9] We disagree.

The appeal in case No. B213079 was from an order imposing over $5,000 in discovery sanctions on appellant and its counsel. Monetary discovery sanction orders exceeding $5,000 are directly appealable under section 904.1 subdivisions (a)(11) and (12). (*Rail-Transport Employees Assn. v. Union Pac. Motor Freight* (1996) 46 Cal.App.4th 469, 475.) As a general rule, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from and upon matters embraced in or affected by that judgment or order, including its enforcement. (§ 916, subd. (a); *Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189–190 (*Varian*) [stay applies to trial court proceedings that directly or indirectly enforce appealed order or

---

[8] During the initial briefing stages of the appeal, appellant was represented by its trial counsel, Ms. Lisitsa. Its new counsel, Peter L. Weinberger, took over the case for purposes of supplemental briefing and oral argument.

[9] Further statutory references are to the Code of Civil Procedure, unless otherwise noted.

10

affect effectiveness of appeal].) But the automatic stay does not apply to the enforcement of a judgment or order for the payment of money "[u]nless an undertaking is given." (§ 917.1, subd. (a)(1).) Monetary discovery sanction orders "have the force and effect of a money judgment, and are immediately enforceable through execution, except to the extent the trial court may order a stay of the sanction. [Citations.]" (*Newland v. Superior Court* (1995) 40 Cal.App.4th 608, 615 (*Newland*).)

Appellant concedes that in the absence of an undertaking, the sanction order was enforceable during the pendency of the appeal, but it argues the court had no jurisdiction to impose further sanctions or dismiss the case before resolution of the issues on appeal from that order. The argument that enforcement of a sanction order is subject to the undertaking requirement in section 917.1 while all other matters encompassed in the order are subject to automatic stay under section 916 is not supported by authority. Discovery orders are not directly appealable, and even writ review of such orders is limited; instead, they generally are challenged by appeal from the final judgment. (*Johnson v. Superior Court* (2000) 80 Cal.App.4th 1050, 1060–1061.) A sanction order exceeding $5,000 is immediately appealable only because it is immediately enforceable as a money judgment. If the direct enforceability of the sanction order is not stayed, there is no reason to stay proceedings that indirectly enforce it. Nor can it be said that continuing the trial court proceedings rendered the appeal ineffective. Notably, although judgment in the underlying case was entered during the pendency of the appeal in case No. B213079, no one argued in that case that the appeal was moot.

II

Appellant challenges the propriety of the terminating sanctions. We review discovery sanction orders for abuse of discretion, resolving all evidentiary conflicts in favor of the order. (*Williams v. Russ* (2008) 167 Cal.App.4th 1215, 1224.) Appellant has the burden to affirmatively demonstrate that the order was arbitrary, capricious, or whimsical. (*Ibid*.)

Under the Civil Discovery Act (§ 2016.010 et seq.), courts may impose monetary, issue, evidence, terminating, and contempt sanctions for "misuse of the discovery

11

process." (§ 2023.030; see *Cedars–Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12.) Misuses of the discovery process include: (1) "[f]ailing to respond or to submit to an authorized method of discovery"; (2) "[m]aking, without substantial justification, an unmeritorious objection to discovery"; (3) "[m]aking an evasive response to discovery"; (4) "[d]isobeying a court order to provide discovery"; (5) "[m]aking or opposing, unsuccessfully and without substantial justification, a motion to compel or to limit discovery"; and (6) "[f]ailing to confer in person, by telephone, or by letter with an opposing party or attorney in a reasonable and good faith attempt to resolve informally any dispute concerning discovery . . . ." (§ 2023.010, subds.(d)-(i).) The trial court may impose terminating sanctions, such as striking a party's pleadings and rendering a judgment by default against the party, for willful violations preceded by a history of abuse, where "the evidence shows that less severe sanctions would not produce compliance with the discovery rules . . . ." (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 992; § 2023.030, subd. (d)(1), (4).)

The record supports the referee's finding that appellant and its counsel repeatedly violated section 2023.010 by failing to respond to discovery, making unmeritorious objections and evasive responses, disobeying court orders, opposing motions to compel without substantial justification, and failing to confer in good faith. The referee properly considered appellant's ongoing failure to comply with discovery requests and court orders. (See *Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058, 1069 ["[r]epeated failure to respond to discovery and to comply with court orders compelling discovery provides ample grounds for imposition of the ultimate sanction"].) Contrary to appellant's contentions, the referee did not emphasize form over substance, nor did he punish appellant for technicalities, past misconduct, or solely for the failure to pay earlier sanctions.

Discovery set one was aimed specifically at clarifying the basis of appellant's claim that the audit of the 2004 policy was incorrect. After appellant's document production in 2007 led to a reaudit and reduction of the premium, discovery set two was aimed at clarifying appellant's disagreement with the reaudit. The record indicates that

after the initial document production, appellant persisted in interposing unmeritorious objections and offering incomplete, vague, non-committal, duplicative, or outright contradictory responses to discovery. It continued to do so even after monetary sanctions were imposed and it was warned it could face terminating sanctions.

In its final responses to discovery sets one and two, submitted months after the court-ordered deadline, appellant persisted in refusing to admit the authenticity of correspondence it had received from respondent, and it changed its responses to requests for admission without any justification. It continued to reference "the entire file" or "all documents submitted" instead of specific documents in support of its denials of requests for admission, and it referenced its answer in general rather than any particular defense. It produced multiple copies of documents already produced and found insufficient, without identifying them as duplicates or otherwise justifying their repeated production. The referee was justified in concluding appellant's responses to discovery continued to be dilatory, evasive, and lacking a factual basis.

Appellant suggests respondent was required to meet and confer with it before filing the motion for terminating sanctions. While a meet and confer is required for a motion to compel further responses, there is no such requirement for imposing a sanction for a violation of a prior order. (§ 2030.300, subds. (b) & (e).) Even were there such a requirement, respondent complied with it when it sent detailed meet and confer letters after appellant's December 2008 responses. It was not required to engage in the meet and confer process indefinitely.

Nor was respondent required to take any additional steps before seeking a sanction for appellant's failure to reschedule Mr. Notis's court-ordered deposition after appellant's counsel refused to produce him on September 5, 2008. Counsel made it clear she did not intend to engage in further meet and confers, yet continued to condition compliance on respondent's concession to her demands, even after the referee allowed respondent to continue with Collecto's discovery. The record supports the referee's conclusion that appellant, rather than respondent, failed to meet and confer in good faith.

13

Appellant would like us to resolve evidentiary conflicts in its favor. It relies on Mr. Notis's declaration that there are no more documents to produce to argue that appellant has not been evasive or obstructionist. Mr. Notis's declaration conflicts with his deposition testimony, where he made clear his unwillingness to search his records for responsive documents. Appellant also argues that it complied with discovery in 2007 when it produced hundreds of documents as they were kept in its usual course of business, including tax and payroll records, communications with respondent and Collecto, and various receipts. This general description is insufficient to establish what specific documents were produced, or how they support appellant's claim that the original audit and the reaudit were incorrect. Appellant does not dispute respondent's claim that not all DE-6 and 1099 forms, check registers, and payroll journals for the 2004 policy have been produced.

Instead, in reply, appellant argues there is no admissible evidence that it ever possessed these records or that the first auditor, now deceased, looked at them. While there is no declaration from that auditor, the original audit itself expressly refers to these records. There also is evidence that these are the standard records employers are required to produce during an audit, and that appellant was required to produce them. Appellant's claim that the original audit was conducted by telephone is not supported by the record. That claim is based on a progress summary, dated June 8, 2005, which refers to a telephone request that appellant provide verification for independent contractors. But audit forms and other evidence in the record indicate the original audit took place in May 2005, supporting the conclusion that the telephone call followed the actual audit.

Appellant capitalizes on minor inconsistencies in two declarations signed by Ms. Baker in 2008 and 2009 to argue that reaudits were conducted by two different auditors, one of whom is not truthful. We do not redetermine issues of credibility on appeal, and in any event, the argument is not supported by the record, which indicates only one reaudit was conducted. Ms. Baker signed her first declaration as Carolyn Baker, but on the reaudit and on the second declaration her name appears as Carolyn Glasgow-Baker. In both declarations, Ms. Baker relied on information included in the original

14

audit and the reaudit, but the later declaration is more detailed. The first declaration states that the original audit was based on "the documents made available" by appellant "at that time," while the second declaration lists the specific documents referenced in the original audit. The first declaration states that, based on appellant's document production in this case, Ms. Baker was able to conduct a full reaudit of the 2004 policy. The second declaration explains that she subtracted the payroll for individuals whose independent contractor status had been established from the gross payroll calculation for the policy year. The two declarations are not materially inconsistent.

Appellant argues respondent was not prejudiced because, according to Ms. Baker, it received all the information needed to complete a full reaudit in 2007, and in December 2007, Collecto's attorney represented to the trial court that "substantially all of the discovery has been completed." This argument ignores the subsequent procedural history of the case: that in 2008 respondent issued a reduced invoice based on the reaudit, appellant disputed its accuracy, and Collecto propounded discovery specific to the reduced invoice, to which appellant failed to respond meaningfully. "A party cannot intelligently defend itself against affirmative defenses . . . when the other side's discovery responses consist of legal double-talk and provide no useful information." (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1105 (*Liberty Mutual*).) Prejudice is inherent in tactics that fail to provide a factual basis for a party's defense or counterclaim. (*Ibid.*)

Appellant's insistence that the entire record showed the audits were incorrect did not intelligibly alert respondent to the documents relevant to appellant's defense. Although appellant claimed to have turned over receipts showing payments for materials rather than labor, Ms. Baker already had concluded many of the receipts were either unusable or irrelevant, which is why respondent sought to discover additional evidence of payments to subcontractors. The record indicates appellant failed to appreciate that, as an employer, it had the burden to show its subcontractors should not be treated as employees for purposes of worker's compensation under Labor Code section 2750.5, and that payments made to them should not be treated as payroll under the insurance policy.

15

Appellant identified its claim of settlement as a defense only in opposition to the motion for terminating sanctions, and even then Mr. Notis did not identify any specific evidence of settlement in 2005. His declaration contradicted his statement in deposition, and is inconsistent with appellant's claim on appeal, that Mr. Notis believed a $2,900 payment made in 2007 settled the entire case.

Appellant argues the terminating sanctions were excessive because it was amenable to a lesser evidentiary sanction limit to the documents it already had produced. "The question before us "'is not whether the trial court should have imposed a lesser sanction; rather, the question is whether the trial court abused its discretion by imposing the sanction it chose.'" [Citations.]" (*Liberty Mutual*, *supra*, 163 Cal.App.4th at p. 1105.) Although terminating sanctions cannot be imposed solely for failure to pay monetary sanctions (*Newland*, *supra*, 40 Cal.App.4th at p. 615), the failure to comply with discovery after repeated monetary sanction orders, coupled with the failure to pay those sanctions, is evidence that less severe sanctions are ineffective. (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297.)

Appellant has not shown that the terminating sanctions prevented it from litigating the merits of issues "'entirely unaffected by the discovery procedure . . . .' [Citation.]" (*Newland*, *supra*, 40 Cal.App.4th at p. 614.) It claims the issues in the case had to do with payments to independent contractors, more specifically the treatment of payments for materials as wages, and the alleged payment to settle the case. These were issues pertaining to appellant's position that it did not owe respondent any money. Discovery sets one and two aimed to clarify that position. Although appellant insists its document production in 2007 included evidence sufficient to resolve the case in its favor, it refused to identify any specific evidence in discovery, supporting an inference that the evidence did not favor its position and that appellant engaged in deliberate obfuscation. (See *Liberty Mutual*, *supra*, 163 Cal.App.4th at p. 1103.) Appellant claims the dismissal of its cross-complaint for accounting was unjustified since no discovery violation was asserted as to it. But it has not included the cross-complaint in the record on appeal, and has not shown it sought an accounting on a ground different from its defenses to the complaint.

16

At oral argument, appellants' new counsel, Mr. Weinberger, conceded that trial counsel had been willfully obstructionist, but urged that his client was not at fault and should not have been punished for its previous attorney's misconduct; he argued that, instead, the attorney should have been held in contempt. Mr. Notis's July 2008 deposition testimony provides substantial evidence he shared trial counsel's disdain for the discovery process and was unwilling to exercise due diligence in searching for responsive documents. Terminating sanctions were proper in light of that evidence. (Cf. *Del Junco v. Hufnagel* (2007) 150 Cal.App.4th 789, 799–800 [terminating sanctions proper when both client and attorney are willfully obstructionist].)

Resolving evidentiary conflicts in favor of the judgment, as we are required to, we conclude that substantial evidence supports the imposition of terminating sanctions, and appellant has failed to show that the court abused its discretion in imposing such sanctions.

### III

Appellant contends the default judgment was improper because, in 2008, Commissioner Greenberg declined to issue a writ of attachment based on Ms. Baker's first declaration. Appellant also claims the amount of damages is excessive because of the impossibly high wages imputed to one of its subcontractors.

A default judgment may be granted at a prove-up hearing where the plaintiff establishes a prima facie case with live testimony or, in the court's discretion, with affidavits or declarations. (§ 585, subd. (d); *Johnson v. Stanhiser* (1999) 72 Cal.App.4th 357, 361.) A defaulting defendant cannot participate in such a hearing. (*Devlin v. Kearny Mesa AMC/Jeep/Renault, Inc.* (1984) 155 Cal.App.3d 381, 385.) The court has discretion to consider hearsay testimony in a default prove-up because "[h]earsay admitted without objection is evidence that may be considered. [Citations.]" (*City Bank of San Diego v. Ramage* (1968) 266 Cal.App.2d 570, 584.)

If the plaintiff establishes a prima facie case, the court must render judgment in plaintiff's favor "'for such sum, not exceeding the amount stated in the complaint, . . . as appears from the evidence to be just. [Citations.]'" (*Johnson v. Stanhiser*, *supra*, 72

17

Cal.App.4th at p. 362.) We review an award of damages after a default judgment for substantial evidence, and may reverse it if it is "totally unconscionable and without justification." (*Id*. at p. 361.) In applying the substantial evidence rule, we accept as true the evidence that supports the judgment, disregarding conflicting evidence, and drawing all reasonable inferences in favor of the judgment. (*Chicago Title Ins. Co. v. AMZ Ins. Services, Inc.* (2010) 188 Cal.App.4th 401, 416.) As is true in any appeal, the judgment is presumed correct, and appellant has the burden to affirmatively show error. (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 610.)

The second amended complaint gave appellant notice that respondent sought $204,999.44 in premiums under the 2004 policy based on the reaudit of appellant's payroll for that policy year, and that it sought an estimated premium of $145,573.09 under the 2005 policy, based on the same reaudit because appellant had refused to submit to a separate audit for the 2005 policy year. Respondent's prove-up of these amounts was based on Ms. Baker's 2009 declaration, which referenced additional documents, such as the policy contracts, original audit and reaudit, invoices, and correspondence. Appellant argues the declaration is not substantial evidence for the default judgment because Ms. Baker's earlier, more cursory declaration had been deemed insufficient to support a writ of attachment. Appellant is incorrect. Attachment proceedings are independent of the main action, and findings in such proceedings have no effect on any issue. (§ 484.100; see *Loeb & Loeb v. Beverly Glen Music, Inc.* (1985) 166 Cal.App.3d 1110, 1116.)

The only specific error appellant identifies in the reaudit has to do with $200,647 in payroll attributed to subcontractor Raul Plata between July 27, 2004 and April 9, 2005. Appellant claims it was physically impossible for an individual to earn such wages at the assigned rate of $22.99 an hour, and invites us to conclude that payments for materials must have been improperly included in payroll. We requested supplemental briefing on this issue, and after considering it, conclude that appellant has failed to show error.

Appellant claims respondent has failed to show Plata was paid for services rather than materials. Appellant produced no payroll records for Plata, but its "1099 Detail" shows payments to Plata for construction services, mostly framing. Respondent cites one

18

invoice for materials—a $5,000 downpayment for lumber—which was excluded from the audit. Appellant does not cite any other evidence that Plata was paid for materials rather than services. Absent such evidence, the conclusion that Plata must have been paid for materials is not the sole reasonable inference that can be drawn. Respondent argues that since Raul Plata operated Plata Construction and according to the "1099 Detail" provided services on multiple projects, it is reasonable to infer remuneration was paid to Plata's employees. Appellant objects that this inference is speculative, and argues respondent should have subpoenaed Plata's records to determine what he was paid for. But there is no authority for imposing on respondent any duty beyond that of auditing appellant's records.

In the absence of payroll records, the policy contract allows respondent to use "the contract price for . . . services and materials" by nonemployees as the premium basis. Appellant asks us to take judicial notice of the Internal Revenue Service's instructions for Form 1099-MISC, on which businesses are required to report payments made for "services (including parts and materials)" to nonemployees. The record indicates, and appellant does not dispute, that audits may be based on tax records. The provision in the policy contract for payment to nonemployees is in line with the requirements for reporting such payments for tax purposes.

Appellant argues the "services and materials" provision in the policy contract is contrary to the definition of payroll and remuneration in the California Insurance Commissioner's Workers' Compensation Uniform Statistical Reporting Plan—1995 (USRP), California Code of Regulations, title 10, section 2318.6. The USRP lays out the rules respondent follows in setting premiums. (See *ReadyLink HealthCare, Inc. v. Jones* (2012) 210 Cal.App.4th 1166, 1171 & fn. 2 (*ReadyLink*).) As used in the USRP, "payroll and remuneration are synonymous and mean the monetary value at which service is recompensed." (USRP, part 3, § V, subd. 1.) Payment for materials is not included in the types of compensation that may be considered payroll under the USRP.

The policy contract is not inconsistent with the USRP since respondent admittedly excludes payments for materials from payroll when there is evidence of such payments.

19

Absent such evidence, however, there is no reason to treat undifferentiated payments to subcontractors as payments for materials rather than services. The USRP must be interpreted "with deference to the purposes of the protective workers' compensation legislation," which include ensuring that respondent "has sufficient reserves to pay a worker his or her wages if injured on the job." (*ReadyLink*, *supra*, 210 Cal.App.4th at p. 1176.) In that regard, the burden is on the employer to keep accurate records. (*Ibid.*) Appellant argues that the only penalty for keeping inadequate records under the USRP is to assign the total remuneration to the highest rated classification. (See USRP, part 3, § V, sub. 2.) That begs the question of how the total remuneration is to be determined from inadequate records in the first place.

Drawing all reasonable inferences in favor of the judgment, we conclude respondent's evidence was sufficient to establish a prima facie case that it was owed additional premiums based on the reaudit. Appellant has not shown that the reaudit was incorrect, or that the award of damages is unjustified.

**DISPOSITION**

The judgment is affirmed. Respondent is entitled to its costs on appeal.

**NOT TO BE PUBLISHED** IN **THE OFFICIAL REPORTS**


EPSTEIN, P. J.

We concur:


WILLHITE, J.                           COLLINS, J.

20