[No. B234509. Second Dist., Div. Two. Nov. 6, 2012.]

READYLINK HEALTHCARE, INC., Plaintiff and Appellant, v.
DAVE JONES, as Insurance Commissioner, etc., Defendant and Respondent;
WORKERS' COMPENSATION INSURANCE RATING BUREAU OF
CALIFORNIA et al., Real Parties in Interest and Respondents.

**COUNSEL**

Cooley, Seth Alan Rafkin and Jennifer M. Bogue for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Paul D. Gifford, Assistant Attorney General, Felix E. Leatherwood and Brian D. Wesley, Deputy Attorneys General, for Defendant and Respondent.

Law Offices of John N. Frye and John N. Frye for Real Party in Interest and Respondent Workers' Compensation Insurance Rating Bureau of California.

Judith D. Sapper, Jody A. DeBernardi and Lisa S. Tang for Real Party in Interest and Respondent State Compensation Insurance Fund.

**OPINION**

**DOI TODD, J.**—This case arises from a dispute over a year-end audit by respondent State Compensation Insurance Fund (SCIF) of appellant ReadyLink HealthCare, Inc.'s (ReadyLink) payroll to determine its 2005

premium for its workers' compensation insurance policy.[1] The SCIF assessed an additional premium of $555,327.53 based on its determination that ReadyLink's per diem payments to traveling nurses counted as payroll. The Insurance Commissioner upheld the assessment, finding that ReadyLink's per diem payments were not "reasonable" and therefore not exempt from payroll because they could not be substantiated and were designed to camouflage the assignment of income. ReadyLink petitioned the trial court for a peremptory writ of administrative mandamus, which the court denied.

On appeal, ReadyLink contends (1) the trial court incorrectly applied the substantial evidence standard of review rather than its independent judgment; (2) the commissioner's decision is preempted by federal tax law; (3) the commissioner's decision improperly created a new regulation without public hearing, comment and notice; and (4) equity dictates that the commissioner's decision should not apply retroactively. We find no merit to these contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

ReadyLink is a private health care staffing agency that provides temporary traveling nursing personnel to hospitals and other acute care centers throughout California and in other states. Nurses register with ReadyLink, which verifies the nurses' credentials, notifies them when shifts are available and pays their wages. The SCIF is a quasi-public company created by the Legislature to ensure that mandatory workers' compensation insurance will be available to California employers. (Ins. Code, § 11770 et seq.) Workers' compensation is intended to provide wage replacement for employees who are injured on the job. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1289 [135 Cal.Rptr.2d 665, 70 P.3d 1076].)

In September 2000, the SCIF issued a workers' compensation insurance policy to ReadyLink. The policy was renewed annually until ReadyLink cancelled it in March 2007. At the end of each policy year the SCIF reviewed ReadyLink's payroll records to determine the amount of wages paid that year to ReadyLink's employees, because premium rates are largely based on the employer's payroll. The results of each employer's audit are reported to the WCIRB, which uses the data to arrive at classification and rating systems.

---

[1] The other two respondents are the Department of Insurance and the Workers' Compensation Insurance Rating Bureau of California (WCIRB), which is a rating organization licensed by the Insurance Commissioner under Insurance Code section 11750 et seq. to assist the commissioner in the development and administration of workers' compensation insurance classification and rating systems.

The SCIF conducted its final audit of ReadyLink in 2007 for the policy period of September 2005 through September 2006. While reviewing ReadyLink's payroll registers, the SCIF's senior auditor in the special risk division discovered that ReadyLink was paying nurses a minimum wage of approximately $6.75 per hour plus a much higher stipulated per diem amount. The auditor had conducted dozens of audits of nurse staffing agencies and registries during her employment with the SCIF and had never seen such an agency pay more than 50 percent of wages in the form of per diem payments or pay hourly wages that were significantly below the average hourly rate typically paid to trained, licensed, registered nurses in California. She questioned ReadyLink about its per diem payments and requested documentation to substantiate these payments. ReadyLink responded that it had been audited by the Internal Revenue Service (IRS) in 2008 for the premium year in question and the IRS found that ReadyLink was in compliance with the federal per diem tax rules. ReadyLink did not provide any additional documents to the SCIF. Based on the lack of supporting documentation, the SCIF determined that the per diem amounts should be included as payroll. This increased payroll had the effect of increasing ReadyLink's workers' compensation insurance premium by $555,327.53, for a total annual premium of $800,106.

ReadyLink disputed the SCIF's determination and requested a review. The SCIF referred the dispute to its internal customer assistance program (CAP), which requested that ReadyLink provide "verifiable documentation" of the per diem payments, in the form of "invoices, receipts and other third-party paperwork" showing reimbursement for "travel expenses, lodging, food expenses, and the like." ReadyLink did not provide any documentation. In a decision letter dated February 28, 2008, CAP explained that "the per diem expenses cannot be deemed 'reasonable' without an analysis of the component costs associated with ReadyLink's temporary staff employees relative to location," and concluded that the premium assessment was correct.

ReadyLink appealed the SCIF's decision to the Administrative Hearing Bureau of the Department of Insurance. Following extensive discovery, numerous telephonic status conferences, a three-day evidentiary hearing and posthearing briefing, the administrative law judge issued a 40-page proposed decision on August 6, 2009, upholding the SCIF's determination to include ReadyLink's per diem payments as payroll in calculating its final premium. On September 30, 2009, California's Insurance Commissioner Steve Poizner adopted the proposed decision and designated it as "precedential," rendering it citable in subsequent matters (Commissioner's Decision). (Gov. Code, § 11425.60.)

The Commissioner's Decision phrased the issue presented as follows: "For policy year 2005, did SCIF properly include per diem payments made to

registry nurses as 'payroll' or 'remuneration' pursuant to USRP, Part 3, Section V?"[2] The commissioner noted this was "a matter of first impression." As used by the USRP, payroll and remuneration are synonymous and mean the monetary value at which service is recompensed. (USRP, pt. 3, § V, subsection 1.) Appendix III of the USRP defines the various types of compensation that shall be considered payroll for statistical reporting purposes. With respect to per diem payments, appendix III of the USRP provides that "Subsistence Payments are considered to be reimbursement for additional living expense by virtue of job location." (USRP, appen. III, p. 214.) Pursuant to the USRP, stipulated per diem amounts are not considered payroll if the "amount is reasonable and the employer's records show that the employee worked at a job location that would have required the employee to incur additional expenses not normally assumed by the employee." (USRP, appen. III, p. 215.)

The USRP does not define "reasonable." After a lengthy analysis, including review of federal tax law, the commissioner determined that a per diem payment is reasonable "if it comports with common sense, is not lavish or extravagant, and is not made for the purpose of circumventing per diem regulations." The commissioner also determined that an employer must provide records proving that each employee receiving per diem reimbursement worked at a location that required the employee to incur "additional duplicate living expenses and that such expenses were mitigated by per diem reimbursement."

The commissioner concluded that ReadyLink failed to prove that its per diem payments were reasonable under the USRP because it paid "a below-market hourly wage for the type of work being performed" and then used the per diem payments to "increase[] its nurses' income while avoiding payroll tax liabilities for itself." The commissioner expressly rejected ReadyLink's contention that its per diem payments were reasonable because they comported with the federal per diem amounts for the continental United States (CONUS) listed in 41 Code of Federal Regulations, chapter 301, appendix A (2012). Instead, the commissioner found that ReadyLink failed to prove the per diem payments reflected the traveling nurses' anticipated living expenses, failed to show that its nurses worked at locations that required additional duplicate living expenses beyond normal commuting expenses, failed to monitor employee eligibility for per diem payments, and failed to require its employees to substantiate their per diem expenses.

---

[2] The USRP is the Insurance Commissioner's California Workers' Compensation Uniform Statistical Reporting Plan—1995, California Code of Regulations, title 10, section 2318.6, which is part of the commissioner's regulations. The commissioner incorrectly cited the relevant regulatory section as 2352.1, but the rules that govern the issue of per diem payments are found at California Code of Regulations, title 10, section 2318.6, and are approved by the commissioner under a grant of legislative authority. (Ins. Code, § 11734, subd. (c).)

ReadyLink sought judicial review of the Commissioner's Decision by petitioning the superior court for a peremptory writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5. ReadyLink argued (1) the commissioner exceeded his authority by effectively promulgating a "new" regulation without proceeding through the required public hearing process; (2) the new rule was improperly applied retroactively to ReadyLink; and (3) the commissioner failed to recognize that the IRS regulations are presumptively reasonable. The trial court issued a 10-page ruling denying the petition, and this appeal followed.

## DISCUSSION

### I. *The Trial Court Applied the Correct Standard of Review.*

ReadyLink contends the trial court erred in applying the substantial evidence standard rather than the independent judgment standard because its writ petition was limited to legal issues.

ReadyLink's writ petition sought review of the Commissioner's Decision under Code of Civil Procedure section 1094.5 which provides: "The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence." (Code Civ. Proc., § 1094.5, subd. (b).)

"A trial court's review of an adjudicatory administrative decision is subject to two possible standards of review depending upon the nature of the right involved. (Code Civ. Proc., § 1094.5, subd. (c).) If the administrative decision substantially affects a fundamental vested right, the trial court must exercise its independent judgment on the evidence. [Citations.] The trial court must not only examine the administrative record for errors of law, but must also conduct an independent review of the entire record to determine whether the weight of the evidence supports the administrative findings. [Citation.] If, on the other hand, the administrative decision neither involves nor substantially affects a fundamental vested right, the trial court's review is limited to determining whether the administrative findings are supported by substantial evidence." (*Wences v. City of Los Angeles* (2009) 177 Cal.App.4th 305, 313 [99 Cal.Rptr.3d 199]; see *Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 926 [135 Cal.Rptr.3d 671].)

ReadyLink argues that its writ petition presented purely legal questions that were subject to the trial court's independent review and not the substantial

evidence test. In its written ruling, the trial court specifically addressed the appropriate standard of review and correctly noted that the "substantial evidence test applies in all cases used to review decisions of administrative agencies when no fundamental vested right is involved." The court correctly pointed out that " 'purely economic interests' " do not generally involve fundamentally vested rights, and that more importantly ReadyLink did not contend that the Commissioner's Decision constituted a violation of its fundamental rights. Under such circumstances, the substantial evidence test was appropriate. (*Wences v. City of Los Angeles, supra*, 177 Cal.App.4th at p. 313.)

Moreover, the trial court expressly acknowledged that it was required to give deference to the commissioner's interpretation of his own subsistence payments rule because the commissioner was likely to be intimately familiar with the regulations he had authored and sensitive to the practical implications of one interpretation over another, and the commissioner's interpretation was likely to be correct, citing *Simi Valley Adventist Hospital v. Bonta´* (2000) 81 Cal.App.4th 346, 352 [96 Cal.Rptr.2d 633]. (See *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 12–13 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; *Simi Corp. v. Garamendi* (2003) 109 Cal.App.4th 1496, 1504–1505 [1 Cal.Rptr.3d 207].)

ReadyLink argues in its reply brief that no deference should have been accorded here because the commissioner "did not tout any special expertise giving him an advantage over the courts," and there was no evidence that any senior department officials carefully considered the interpretation and consistently interpreted it over time. We need not consider an argument raised for the first time in a reply brief. We note that this was not ReadyLink's position in the trial court. ReadyLink argued to the trial court in its opening memorandum that no deference was due because the commissioner had issued a new regulation. Whatever the theory, there is no merit to ReadyLink's argument as the trial court expressly acknowledged that " 'final responsibility for interpreting a statute or regulation rests with the courts and a court will not accept an agency interpretation which is clearly erroneous or unreasonable.' (*Aguilar v. Association for Retarded Citizens* (1991) 234 Cal.App.3d 21, 28 [285 Cal.Rptr. 515]."

We are satisfied that the trial court applied the correct standard of review.

II. *There Is No Federal Preemption.*

On appeal ReadyLink contends for the first time that the Commissioner's Decision is preempted by federal law. Specifically, ReadyLink argues that the Commissioner's Decision creates a "substantial obstacle" for ReadyLink and

other employers to enjoy the benefits of the federal per diem rules—under which certain per diem payments are deemed substantiated—by imposing onerous documentation requirements on employers that federal law does not require. ReadyLink also contends that this court is not the proper forum to decide the preemption issue because the unidentified evidence in this regard is purportedly undeveloped. It nevertheless presents its arguments in the event we address the issue.

We first note that after ReadyLink filed a notice of appeal in this court, it filed a class action lawsuit in federal district court against the SCIF and the commissioner seeking a declaratory judgment that the Commissioner's Decision is preempted by federal law. The SCIF and the commissioner filed motions to dismiss the federal complaint. The day after ReadyLink filed its opening brief in this court, the federal district court issued an order granting the motions to dismiss. The federal court ruled that the requirements for abstention were met under *Younger v. Harris* (1971) 401 U.S. 37 [27 L.Ed.2d 669, 91 S.Ct. 746], finding that the federal action was duplicative, California has a strong interest in the regulation of its insurance industry, and the federal action would interfere with the state action by having the practical effect of enjoining the state proceedings. The federal court also found that "ReadyLink could have adequately raised its federal arguments in state court."

We have granted ReadyLink's request to take judicial notice of a notice of appeal it recently filed in the United States Court of Appeal for the Ninth Circuit. In its reply brief, ReadyLink "urges the Court to stay this matter pending the outcome of the appeal in the federal case," and "respectfully renews its motion to stay," which this Court previously denied. We decline to treat such a request presented in the middle of a reply brief as a formal motion to stay. (Cal. Rules of Court, rule 8.54(a)(1) ["a party wanting to make a motion in a reviewing court must serve and file a written motion . . ."].)

■ We next address the Department of Insurance's argument that ReadyLink has forfeited the preemption issue by failing to raise it in the trial court. The department concedes that ReadyLink was precluded from raising preemption at the administrative agency level. Article III, section 3.5, subdivision (c) of the California Constitution states that an administrative agency has no power "[t]o declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal

law or federal regulations." But the department argues that ReadyLink should have raised the issue in its writ of mandamus, citing *Radtke v. Alcoholic Beverage Control Appeals Bd.* (C.D.Cal. 1980) 491 F.Supp. 42, 43, and *Delta Dental Plan v. Mendoza* (9th Cir. 1998) 139 F.3d 1289, 1296. Neither of these cases, however, mandates that preemption must first be raised in the trial court to preserve the issue for appellate review. The *Radtke* court merely concluded that article III, section 3.5 of the California Constitution does not preclude state courts from determining constitutional issues arising from administrative decisions, and the *Delta Dental* court merely noted that the appellant had raised a preemption issue in the administrative proceedings. We agree with ReadyLink that a party may raise a constitutional issue, like preemption, for the first time on appeal. (See *Rental Housing Assn. of Northern Alameda County v. City of Oakland* (2009) 171 Cal.App.4th 741, 755 [90 Cal.Rptr.3d 181] [permitting preemption to be raised for first time on appeal as "questions of law regarding matters of public concern"]; *Francies v. Kapla* (2005) 127 Cal.App.4th 1381, 1386 [26 Cal.Rptr.3d 501] [exercising discretion to address new arguments on appeal involving pure questions of law based on undisputed facts]; *Hughes v. Blue Cross of Northern California* (1989) 215 Cal.App.3d 832, 848–849 [263 Cal.Rptr. 850] [permitting litigant to raise ERISA (Employee Retirement Income Security Act of 1974; 29 U.S.C. § 1001 et seq.) preemption at any time if it affects subject matter jurisdiction]; *Mountains Recreation Conservation Authority v. Kaufman* (2011) 198 Cal.App.4th Supp. 1, 5 [130 Cal.Rptr.3d 844] [considering preemption argument raised for the first time on appeal].)

Turning to preemption, ReadyLink sets forth the issue as "whether the Commissioner's Decision impacts the operations of ReadyLink and other employers such that it creates an 'obstacle' to enjoyment of the benefits provided for by federal law. (*Geier v. American Honda Motor Co.* (2000) 529 U.S. 861, 873–874 [146 L.Ed.2d 914, 120 S.Ct. 1913].)" ReadyLink argues: "Specifically, the Commissioner's Decision erases the certainty and stability of the federal CONUS rates and sets forth a documentation-heavy substantiation protocol that permits insurers to include *per diem* payments as wages in determining workers' compensation insurance premiums even though the insureds have complied with IRS safe harbor provisions" that "set presumptively reasonable *per diem* amounts for hundreds of locations around the country." ReadyLink complains that while "under the IRS Regulations an employer may rely on a sum certain, under the Commissioner's Decision the employer must now judge the 'reasonableness' of *per diem* amounts in multiple localities around the state."

The problem with ReadyLink's argument is that it attempts to compare two distinct areas of law. The IRS collects tax revenue from employers

and employees to fund a variety of federal programs, whereas the purpose of the USRP is to accurately recognize the amount of an employee's real wages to ensure that the SCIF has sufficient reserves to pay a worker his or her wages if injured on the job. As stated in *Contractor's etc. Assn. v. Cal. Comp. Ins. Co.* (1957) 48 Cal.2d 71, 74 [307 P.2d 626], the purpose of the workers' classification and rating system is "to require a premium rate which would assure adequate reserves to meet claims as they matured." Thus, when the commissioner's rules are being interpreted, such an interpretation must be made with deference to the purposes of the protective workers' compensation legislation. (See *S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 353–354 [256 Cal.Rptr. 543, 769 P.2d 399].) Though the commissioner may consult other laws and other agency require-ments, as he did here as reflected in the nine pages of his decision which review IRS tax regulations, he is not governed by how other agencies interpret and apply their own rules and laws; nor are the courts. (*Simi Corp. v. Garamendi, supra*, 109 Cal.App.4th at p. 1505 [giving deference to the commissioner's interpretation of his own rules].) Additionally, while the federal CONUS table may be applicable for federal income tax purposes, as the commissioner noted, it is not the only per diem table available. For example, California's per diem schedule for state employees differs from the federal table.

Moreover, the Commissioner's Decision does not frustrate federal law or create an obstacle for employers to comply with both federal and state regulations on the treatment of per diem allowances. The Commissioner's Decision merely determined that under his subsistence payments rule, a per diem payment is reasonable "if it comports with common sense, is not lavish or extravagant, and is not made for the purpose of circumventing per diem regulations." Furthermore, an employer must provide records proving that each employee receiving a per diem reimbursement worked at a location that required the employee to incur additional duplicate living expenses and that such expenses were mitigated by per diem reimbursement.

■ We reject ReadyLink's complaint that proving its per diem payments were reasonable in accordance with the Commissioner's Decision is overly burdensome for employers to follow. Indeed, the commissioner found that other temporary nurse staffing agencies had explicit eligibility requirements for per diem payments, and noted that "each of the ten travel nurse companies listed in Exhibit 275 explicitly states that per diem payments are contingent upon the nurse travelling a certain distance away from their permanent home and establishing a temporary residence during the assign-ment." The commissioner also found that "unlike other nurse registries,

ReadyLink employees working within 50 miles of their permanent tax home receive per diem payments just like those nurses who have relocated for their positions." Also undermining ReadyLink's argument that the Commissioner's Decision imposes an overly burdensome documentation requirement is the commissioner's finding that ReadyLink's "rivals are strictly monitoring their employees for use of permanent and temporary housing facilities." As the commissioner noted: "Appellant presented no evidence that compliance with USRP regulations is an 'administrative burden.' Employers routinely compile information for regulatory purposes and already comply with incongruent tax rules and regulations. . . . Given the various laws governing employer recordkeeping and given that the USRP rules do not require any novel recordkeeping, Appellant's argument that compliance with USRP regulations is unduly burdensome is not persuasive." (Fn. omitted.)

■ Of further significance is the trial court's finding that ReadyLink did not comply with IRS regulations: "Thus, despite Petitioner's argument to the contrary, these payments did not comply with IRS regulations. The IRS requires that the taxpayer show that the expenses 'are ordinary and necessary' and incurred 'while away from home in the pursuit of trade or business.' [(26 U.S.C. § 162(a)(2).)] ReadyLink's proof adduced in this proceeding failed to satisfy any of these requirements. . . . That a tax audit performed by an IRS agent failed to disclose a violation has no relevance to the instant proceeding. Evading detection is not the equivalent of a finding of innocence. Even when an employer uses CONUS tables (setting forth the maximum per diem rates for each locality), the taxpayer must also continue to substantiate the time, place and business purpose relating to the expense. . . . None of the records adduced by ReadyLink in the instant proceeding established employee substantiation, as required by federal tax regulations."

We agree with respondents that ReadyLink's federal preemption argument is nothing more than a red herring and a distraction from the real issue of whether the commissioner exceeded his authority in determining that ReadyLink's per diem payments constitute payroll for workers' compensation premium purposes. Under the circumstances here, we are satisfied that the Commissioner's Decision is not preempted by federal law.

III. *The Commissioner's Decision Is Not a New Regulation.*

ReadyLink contends the commissioner "abused his discretion by effectively revising and/or amending the USRP subsistence payment rule without a

public hearing and opportunity to comment as required by California Insurance Code section 11750(b)." Specifically, ReadyLink argues that the Commissioner's Decision "promulgates a bright line rule that an employee must work at a temporary location that is *at least 50 miles* from their [*sic*] tax home," which "represents an entirely new rule of which ReadyLink had no notice, and no way to reasonably anticipate." We agree with respondents that this latest contention is simply another attempt by ReadyLink to escape the consequences of its intentional misreporting of payroll.

Contrary to ReadyLink's argument, the commissioner did not create a bright-line 50-mile rule. The commissioner noted that while some of ReadyLink's competitors explicitly made per diem payments available only to those employees who worked more than 50 miles from their tax home, ReadyLink admitted it did not know whether its nurses were using per diem payments to offset duplicate expenses and did not require any substantiation regarding the use of such monies, no matter where the nurses lived. The commissioner also stated that "merely living more than 50 miles from their employment does not automatically render those nurses eligible for per diem payments" because "to meet the USRP eligibility requirements for subsistence payments, these nurses also must prove their employment resulted in additional duplicative living expenses." Because ReadyLink could not substantiate its per diem payments to *any* nurses in *any* localities, the commissioner determined that such payments were properly included in ReadyLink's payroll.

The commissioner did not create a new regulation; he simply did what ReadyLink asked: He interpreted the USRP's subsistence payments rule to determine whether ReadyLink's per diem payments constituted payroll. The USRP expressly mandates that in order to be exempt from payroll calculation, any per diem payment must be "reasonable and the employer's records show that the employee worked at a job location that would have required the employee to incur additional expenses not normally assumed by the employee." (USRP, appen. III, p. 215.) Because the USRP does not define what is "reasonable," the commissioner used dictionary definitions to apply the plain meaning of the word "reasonable" to include "expenses that are moderate and within the bounds of common sense" and to exclude "extravagant or lavish expenditures." The trial court found this interpretation to be appropriate and we agree. It cannot reasonably be argued that such an interpretation creates a new rule.

The commissioner also applied a plain meaning to "job location" by interpreting the statement to mean that the employee travels for work. As the commissioner noted, absent the necessity to travel an employee simply does not incur "additional expenses" beyond those of any other workday. There is

no other reasonable interpretation in light of the USRP's subsistence payments rule that per diem payments are "reimbursement for *additional living expense by virtue of job location.*" (USRP, appen. III, p. 214, italics added.)

Finally, the USRP is clear that an employer must keep records substantiating that the per diem payments were reimbursements for additional expenses not normally assumed by the employee. The commissioner simply stated: "The USRP clearly sets forth the employer's per diem record-keeping obligation. The employer must provide records proving that each employee receiving per diem reimbursement worked at a location that required the employee to incur additional living expenses. The USRP also mandates that an employer's records must demonstrate the employee incurred additional duplicate living expenses and that such expenses were mitigated by per diem reimbursement." ReadyLink cannot claim any confusion or surprise with respect to the recordkeeping obligation given that the SCIF repeatedly asked ReadyLink for documentation verifying its per diem payments both during and after the audit.

### IV. *Equity Does Not Prevent Retroactive Application of the Commissioner's Decision.*

ReadyLink contends that equity dictates that the Commissioner's Decision should not apply retroactively to ReadyLink's 2005 premium year, because the decision constitutes a new regulation, ReadyLink's recordkeeping practices were based on the advice of payroll and legal experts and passed muster with the IRS, and the SCIF's prior audits had excluded the same per diem payments from ReadyLink's payroll.

We have already concluded that the commissioner did not create a "new" regulation. Instead, the commissioner provided a useful interpretation of an existing regulation and applied it to the set of facts presented by ReadyLink. That a sole IRS auditor or prior SCIF auditors did not discover that ReadyLink's per diem payments could not be substantiated is not evidence that ReadyLink's practices were correct or that it reasonably believed them to be correct.[3] We find no merit to ReadyLink's equity argument. Instead, ReadyLink enjoyed a significant windfall by underreporting its nurses' true incomes for five years.

---

[3] Indeed, ReadyLink's primary witness admitted that it had no real tax counsel; she produced no documents showing what recordkeeping advice was given to ReadyLink; and the Commissioner found that certain of her testimony was contradicted by written documents and that she altered certain documents.

## DISPOSITION

The judgment is affirmed. Respondents to recover their costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 13, 2013, S207388.