Filed 4/10/25  San Diego Police Dept. v. Nailon CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| SAN DIEGO POLICE DEPARTMENT, | D084067 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. D037-2023-00039942-CU-PT-CTL) |
| KRISTINE LYNN NAILON, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Peter F. Murray, Judge.  Affirmed.

Kristine L. Nailon, in pro per., for Defendant and Appellant.

Office of the City Attorney, Mara W. Elliott, City Attorney, Jean E. Jordan, Assistant City Attorney and Blair McGregor, Deputy City Attorneys, for Plaintiff and Respondent.

### INTRODUCTION

Kristine Lynn Nailon appeals as a self-represented litigant from a gun violence restraining order (GVRO) enjoining her from possessing a firearm for three years.  We understand her appeal to raise (1) a twofold challenge to the trial court's jurisdiction to impose the order, (2) a claim there was

insufficient evidence to support issuance of the GVRO, and (3) a claim she was illegally prosecuted for a crime in retaliation for asserting a discrimination complaint against the United States Navy. Nailon's claims are all forfeited or lacking in merit. We affirm.

PROCEDURAL AND FACTUAL BACKGROUND

On September 15, 2023, Naval Criminal Investigative Services (NCIS) alerted the San Diego Police Department (SDPD) that Nailon attempted to purchase a firearm. Pursuant to Penal Code section 18175,[1] SDPD petitioned the trial court that same day for a GVRO against her.

In a supporting declaration, Detective Justin Garlow averred he was a member of SDPD's Gun Violence Response Unit, and he was assigned to investigate and file GVRO petitions. Based on documents he reviewed during his investigation of Nailon, he determined she was in the United States Navy in April 2023, and she was stationed in Japan on the USS Ronald Reagan. On April 19, she reportedly told the psychological provider on duty she had a plan "to kill all members" aboard the ship. She also had a plan to hurt or kill a particular "unnamed sailor." She was "motivated by her dislike for the perceived mistreatment she received from [service] members aboard the [ship]," and she "wanted to see others on the ship suffer like she suffered."

Nailon was transferred to the Naval Medical Center in San Diego for inpatient psychological treatment. There, on June 8, 2023, she told an NCIS interviewer "she had a plan to[ ] 'shoot up the ship[ ]' and everyone on it by attacking the [master-at-arms] and stealing their guns." She said she "would make [her] way to the ship and kill anyone coming on and off the ship," and she claimed this would be easy for her to accomplish because she worked

_____

1     Undesignated statutory citations are to the Penal Code.

security at her last command.  On a scale of 1 to 10, with 10 being the most serious, she claimed to be a "10."

Based on the totality of his investigation, Garlow opined that a GVRO was needed "to protect the public and prevent harm to [Nailon] and others," and there were "no lesser restrictive means to ensure public safety."

The trial court held a hearing on November 7, 2023.  Nailon was represented by counsel and was personally present at the hearing.  The hearing was not recorded.

Based on the facts stated in the petition, the trial court found SDPD had met its evidentiary burden by clear and convincing evidence.  The court granted the petition and ordered that Nailon (1) "cannot own, possess, have, buy or try to buy, receive or try to receive, or in any other way get a gun or firearm," (2) "must sell to a licensed gun dealer or turn in to police any guns that [she] possesses or controls and this must be done within 24 hours of being served," and (3) "must file a receipt with the court within 48 hours of receiving [the] order that proves guns [in her possession] have been turned in or sold."  The court ordered the GVRO in place for three years.

## DISCUSSION

### I.

### *The Trial Court Had Jurisdiction To Issue the GVRO*

As we understand her arguments, Nailon contends the trial court lacked jurisdiction to impose a restraining order for two reasons.  First, she contends the court lacked territorial jurisdiction to prosecute her for a crime that did not take place in California.  As she sees it, the trial court lacked jurisdiction because the first statement she made about killing her shipmates took place "in a foreign country under a Military Jurisdiction," i.e., while she

3

was on deployment on a United States Navy ship in Japan, not while she was here in San Diego.

Second, Nailon contends that, due to her employment by the Navy, Article 134 of the Uniform Code of Military Justice (UCMJ) (10 U.S.C. § 934), preempted the California statutes that establish the procedures for obtaining a GVRO. In her view, as we understand it, the United States Department of the Defense has exclusive authority over the criminal prosecution of military personnel and SDPD was therefore barred from seeking the restraining order.

In support of her preemption argument, Nailon cites to *United States v. Rapert* (C.A.A.F. 2016) 75 M.J. 164 to demonstrate that "communicating a threat" can be tried by a military court-martial. (*Id.* at p. 165.) As further support, she cites to the double jeopardy and confrontation clauses of the United States Constitution. (See U.S. Const., 5th & 6th Amends.) As a remedy for the asserted violations, she seeks orders sealing the records relating to the GVRO as well as damages.

SDPD responds that Nailon forfeited these issues and related supporting arguments by failing to assert them in the trial court. We disagree. As we understand Nailon's arguments, they may be raised for the first time on appeal. Territorial jurisdiction implicates the authority of the court to consider and decide a criminal action, and therefore implicates its subject matter jurisdiction. (*People v. Betts* (2005) 34 Cal.4th 1039, 1049.) And a lack of fundamental jurisdiction may be raised for the first time on appeal. (*Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339.) In addition, a party may raise certain constitutional issues, like preemption, for the first time on appeal if they are based on matters of law and undisputed facts, which is the case here. (Compare *ReadyLink Healthcare, Inc. v. Jones*

4

(2012) 210 Cal.App.4th 1166, 1174–1175 [considering a preemption issue involving a question of law based on undisputed facts despite the fact it was not raised in the trial court] with *Los Angeles Police Protective League v. City of Los Angeles* (2022) 78 Cal.App.5th 1081, 1100–1101 [refusing to consider a fact-based constitutional issue that was not developed in the trial court].)

Nailon's contentions, however, fail on the merits. Her first contention is based on a fundamental misunderstanding of the nature of the proceedings against her. Nailon was not prosecuted for committing a crime in the underlying proceedings. The GVRO is a "*civil* restraining order." (Pen. Code, § 18100, italics added; see generally *San Diego Police Department v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 574 (*Geoffrey S.*).) It was not issued as punishment for committing a crime in Japan or anywhere else. It issued due to the "significant danger" Nailon will cause personal injury *in the future* to herself or another person using a firearm. (§ 18175, subd. (b)(1).) It is true, now that the GVRO is in place, Nailon may be charged and convicted of a misdemeanor if she violates it. (§ 18205, subd. (a).) But that has not happened (and hopefully will never happen). The rules that govern territorial jurisdiction in criminal proceedings therefore do not apply.

Nailon's preemption argument fails for the same reason. She was not prosecuted by the State of California for a crime potentially preempted by federal law for exclusive prosecution through a military court-martial. Again, the GVRO was imposed through a "civil restraining order process." (§ 18100.) Nailon, in any event, is mistaken about the relationship between Article 134 of the UCMJ and local criminal law. " 'An act or omission which violates both the UCMJ and local criminal law, foreign or domestic, may be tried by a court-martial, or by a proper civilian tribunal, foreign or domestic, or . . . by both.' " (*United States v. Rice* (C.A.A.F. 2020) 80 M.J. 36, 41.) Issuance of the

5

GVRO accordingly was not barred by Article 134 of the UCMJ.

For all these reasons, we reject Nailon's contention the trial court lacked jurisdiction to issue the GVRO.

II.

*Substantial Evidence Supported the GVRO*

Nailon contends the evidence was insufficient to support the trial court's issuance of the GVRO. We disagree.

Our review of the sufficiency of the evidence is for substantial evidence, "[taking] into account the clear and convincing standard of proof mandated by the GVRO statute." (*Geoffrey S., supra*, 86 Cal.App.5th at p. 575; § 18175, subd. (b).) "When reviewing a finding that a fact has been proved by clear and convincing evidence, the question before the appellate court is whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011–1012 (*O.B.*).) We "view the record in the light most favorable to the prevailing party below and give appropriate deference to how the trier of fact may have evaluated the credibility of witnesses, resolved conflicts in the evidence, and drawn reasonable inferences from the evidence." (*Ibid.*)

The GVRO imposed here against Nailon was issued after a notice and hearing pursuant to section 18175.[2] To issue the GVRO, the trial court was therefore required to find that (1) possession of a firearm by Nailon would pose a "significant danger of causing personal injury" to herself or another person, and (2) a restraining order was necessary to prevent such personal injury because "less restrictive alternatives" either had been found to be

---

[2] The court's minute order contains a typographical error mis-identifying the code section as "18157."

6

ineffective, or were otherwise inadequate or inappropriate under the circumstances. (§ 18175, subds. (b)(1) & (2).)

Applying the governing standard of review, we conclude there was sufficient evidence to support a finding that there was a high probability Nailon posed a significant danger of committing gun violence within the meaning of section 18175, subdivision (b). She made explicit threats to shoot and kill all the members aboard the USS Ronald Reagan when she was stationed there. The trial court could infer that the psychological professional who spoke with Nailon found the threat credible, because Nailon was subsequently transferred to a Navy medical center for *inpatient* psychological treatment. Not two months after the first threat, she again threatened to kill her shipmates and provided details about her plan to do so. She described the seriousness of her intent as a "10" on a scale of 1 to 10. Three months later, she attempted to buy a gun.

The evidence was also sufficient to support a finding by clear and convincing evidence that the GVRO was necessary to prevent personal injury because less restrictive alternatives were ineffective, inadequate or inappropriate. Nailon remained firm and serious about her desire to kill her shipmates despite months of inpatient psychological treatment. She not only said she planned to use a gun to kill them, she attempted to buy one. And based on the totality of his investigation, Garlow, a detective assigned to the SDPD's Gun Violence Response Unit, opined that a GVRO was needed "to protect the public and prevent harm to [Nailon] and others," and there were "no lesser restrictive means to ensure public safety."

Nailon asserts the evidence supporting the petition "was intentionally fabricated by [SDPD] and NCIS." We are not persuaded by her unsupported contention. Nailon did not file a written opposition to the petition, she has

7

not provided us with a transcript or settled statement of the hearing, and she points to no evidence in the record that contradicts the statements in Garlow's declaration. There is nothing in the record from which we could even potentially infer Garlow's declaration lacked credibility. And even if there were, we would be required to "give due deference to how the trier of fact may have evaluated the credibility of witnesses." (*O.B., supra*, 9 Cal.5th at p. 996.)

Considered in its entirety, we conclude the evidence was sufficient to support the trial court's finding by clear and convincing evidence that all the elements required to support the GVRO were satisfied.

### III.

*Nailon's Remaining Contention Is Forfeited*

Nailon contends the Navy sought the GVRO to retaliate against her for filing an employment discrimination complaint. To support her contention, she asks us to take judicial notice of a "Victim Reporting Preference Statement," and a "Navy Equal Opportunity and Harassment Complaint." Here, we agree with SDPD that she has forfeited review of this particular contention, and we deny her request for judicial notice. (See Cal. Rules of Court, rule 8.252.) Nailon has not provided us with a reporter's transcript or settled statement to show she made this argument at the hearing before the trial court, nor that she sought admission of the documents she seeks to use to support her claim.

As a self-represented litigant, Nailon "is entitled to the same but no greater consideration than other litigants." (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861.) "[She] must follow the rules of appellate procedure." (*Ibid.*) Pursuant to those rules, "we may disregard factual contentions that . . . are based on information that is outside the record."

8

(*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520.)  We may also disregard arguments that are conclusory and unsupported by tailored legal authority. (*Janney v. CSAA Ins. Exchange* (2021) 70 Cal.App.5th 374, 391.)  And we may disregard arguments when there is no record they were presented to the trial court.  (E.g., *People v. McCullough* (2013) 56 Cal.4th 589, 593.)  Based on these settled principles of appellate procedure, Nailon has not preserved her remaining contention for appeal.

DISPOSITION

The judgment is affirmed.  As the prevailing party, SDPD is entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


DO, J.


WE CONCUR:


O'ROURKE, Acting P. J.


DATO, J.