Filed 10/23/25  Springs v. SBM Site Services CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BRIAN SPRINGS, | |
| Plaintiff and Respondent, | G063924 |
| v. | (Super. Ct. No. 30-2018-01015248) |
| SBM SITE SERVICES, LLC, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Randall J. Sherman, Judge. Reversed and remanded with instructions. Request for judicial notice is granted.

Downey Brand, William R. Warne, Annie S. Amaral and Alexandra K. LaFountain for Defendant and Appellant.

Matern Law Group, Matthew J. Matern, Kiran Prasad, Matthew W. Gordon and Erin R. Hutchins for Plaintiff and Respondent.

Plaintiff Brian Springs filed a motion to vacate the trial court's prior order compelling to arbitration Springs's employment-related claims against his former employer, defendant SBM Site Services, LLC (SBM). Springs argued SBM failed to timely pay arbitration fees pursuant to Code of Civil Procedure section 1281.98, subdivision (a)(1).[1] The court granted the motion and awarded Springs monetary sanctions pursuant to sections 1281.98, subdivision (c)(1) and 1281.99, subdivision (a).

SBM acknowledges JAMS, Inc., the parties' alternative dispute resolution (ADR) provider, provided SBM's counsel of record an invoice requesting payment of then due and owing arbitration fees, which fees SBM did not pay within 30 days as required by section 1281.98, subdivision (a). SBM challenges the trial court's order granting the motion by raising the novel argument section 1281.98 requires service of the invoice directly on the party who owes fees, and not on its counsel. Therefore, its argument continues, because SBM was never directly served, the 30-day period was never triggered, and the court should not have granted the motion. Alternatively, SBM argues section 1281.98 is preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.).

We conclude the trial court correctly determined the 30-day period under section 1281.98 was triggered when JAMS provided the invoice to SBM's counsel. However, in light of the Supreme Court's recent decision in *Hohenshelt v. Superior Court* (2015) 18 Cal.5th 310 (*Hohenshelt*), we reverse the trial court's order granting Springs's motion to vacate the prior order

---

[1] All further code references are to the Code of Civil Procedure unless otherwise specified.

compelling arbitration and remand with directions the court consider whether SBM may be excused for its failure to timely pay arbitration fees.

FACTS AND PROCEDURAL HISTORY

In August 2018, Springs filed a putative class action complaint against SBM alleging wage and hour claims under the Labor Code, a claim for violation of the unfair competition law (Bus. & Prof. Code, § 17200 et seq.), and a claim under the Labor Code Private Attorney General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.). The trial court granted SBM's motion to compel arbitration as to Springs's individual wage and hour claims, dismissed his class claims, and stayed his PAGA claim pending arbitration. In July 2021, Springs and SBM reached a settlement agreement regarding Springs's individual claims, leaving only Springs's PAGA claim unresolved.

In April 2022, Springs and SBM agreed to stay the PAGA claim while *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639 was pending in the United States Supreme Court. After the Supreme Court issued its decision in *Viking River* in June 2022, the parties stipulated to lift the stay on the PAGA claim and met and conferred about how to handle the litigation moving forward in light of the high court's decision.

SBM took the position the individual component of the PAGA claim should proceed in arbitration and the representative component of that claim should be dismissed or stayed pending the outcome of the arbitration. Springs "disputed the impact of *Viking River* on the instant matter and disagreed that arbitration over any aspect of Springs's PAGA claim was appropriate."

In light of the parties' disagreement, SBM filed another motion to compel arbitration as to the individual component of Springs's PAGA claim. In January 2023, the trial court granted the motion to compel and ordered

3

the individual component of the PAGA claim to arbitration and the representative component of that claim stayed pending the completion of arbitration.

The parties thereafter agreed on an arbitrator to hear the claim through JAMS. On September 13, 2023, JAMS sent the parties a letter confirming the commencement of the parties' arbitration and the appointment of the parties' selected arbitrator. That letter stated in part: "Pursuant to JAMS policy, the paying party has been billed a preliminary deposit to cover the expense of all pre-hearing work, such as reading, drafting of orders, and conference calls. An invoice for this deposit will follow in a separate email. Payment is due upon receipt. Upon receipt of payment, a Preliminary Arbitration Management Conference Call will be scheduled with the Arbitrator."

The following day, JAMS sent an e-mail to SBM's attorney William Warne, copying SBM's attorney Annie Amaral and Springs's attorneys, stating: "Please find your Deposit Request attached for the above referenced matter. Please note that payment is due upon receipt." The deposit request dated September 13, 2023, and addressed to attorney Warne, reflected SBM was billed and then owed JAMS a balance of $14,000.

A couple weeks later, on September 27, 2023, a JAMS case manager sent an e-mail to all counsel, including Warne and Amaral, stating: "Dear Counsel, [¶] This initial retainer for [the selected arbitrator] was due upon receipt. Once paid, a conference call to initiate this arbitration will be set. [¶] I have attached a copy of the invoice for your consideration. Please submit your payment at your earliest convenience via overnight mail to[] JAMS . . . and please include a copy of the invoice with your payment." A couple weeks after that, on October 12, 2023, the JAMS case coordinator sent

4

another e-mail to all counsel, including Warne and Amaral, in which he asked: "Dear Counsel, [¶] Any update on payment of the attached invoice? [¶] Please let me know."

As of October 25, 2023, SBM had not paid the invoice. Springs's counsel thereafter wrote a letter to JAMS, copying SBM's attorneys, in which counsel informed all parties that because SBM had failed to pay fees within 30 days after they were due and had thus materially breached the arbitration agreement, Springs had elected to withdraw his claims from arbitration pursuant to section 1281.98, subdivision (a). That same day, SBM placed a check in the amount of $14,000 in the overnight mail to JAMS.

On October 25, 2023, Springs filed a motion under section 1281.98 seeking an order vacating the trial court's prior order compelling arbitration of the individual component of Springs's PAGA claim. In his motion, Springs argued: "Despite receiving multiple warnings from JAMS, [SBM] has failed to pay its outstanding balance of $14,000.00 in direct breach of the JAMS Arbitration Administrative Policies, the arbitration agreement, and [Springs's] statutory obligations under [section] 1281.98[, subdivision] (a)." Springs also requested, pursuant to sections 1281.98, subdivision (c)(1) and 1281.99, subdivision (a), an award of monetary sanctions in the amount of $24,069.50 for SBM's breach of the arbitration agreement. SBM filed an opposition to the motion, arguing the 30-day deadline to pay the arbitration fees invoice was never triggered because the deposit request was only served on SBM's attorneys and not directly on SBM itself. SBM also opposed Springs's request for sanctions.

The trial court rejected SBM's arguments and granted Springs's motion to vacate the order compelling arbitration pursuant to section 1281.98

5

and also awarded Springs monetary sanctions in the total amount of $6,458. SBM timely appealed.[2]

Following briefing and oral argument in this case, the Supreme Court decided *Hohenshelt, supra*, 18 Cal.5th 310. We vacated submission pursuant to rule 8.256(e)(1) of the California Rules of Court and invited the parties to file letter briefs addressing the impact of that decision on this case. Both parties submitted letter briefs accordingly.

## DISCUSSION

## I.

## SECTION 1281.98

The California Arbitration Act (CAA) (§ 1280 et seq.) was enacted in 1961 to safeguard the "the right of private parties to resolve their disputes through the 'efficient, streamlined procedures' of arbitration." (*Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 633 (*Gallo*), disapproved on other grounds in *Hohenshelt, supra*, 18 Cal.5th at p. 349.) In 2019, the

---

[2] During the pendency of this appeal, Springs filed a motion requesting this court take judicial notice of (1) legislative history pertaining to the enactment of section 1281.98; (2) the petition for order compelling arbitration filed in *Abarca v. Lyft, Inc.* (N.D.Cal., Dec. 13, 2018, No. 3:18-cv-07502); and (3) the petition for order compelling arbitration filed in *Abadilla v. Uber Technologies, Inc.* (N.D.Cal., Dec. 5, 2018, No. 3:18-cv-07343). In his request, Springs argues the proffered legislative history "is relevant to this appeal to the extent this [c]ourt finds the plain language of the statute to be unclear or in conflict with other statutory provisions," and the proffered court documents "are relevant to the legislative finding that employers' delayed payment of arbitration fees was delaying resolution of employees' claims."

SBM did not file an opposition to the request. Springs's request for judicial notice is granted. (See Evid. Code, §§ 452, subds. (c) & (d), 459, subd. (a).)

Legislature added section 1281.98 to the CAA as part of Senate Bill No. 707 (2019–2020 Reg. Sess.) (Senate Bill 707) (Stats. 2019, ch. 870, § 5).

In enacting the statute, the Legislature explained it sought to address how "[a] company's failure to pay the fees of an arbitration service provider in accordance with its obligations contained within an arbitration agreement or through application of state or federal law or the rules of the arbitration provider hinders the efficient resolution of disputes and contravenes public policy." (Stats. 2019, ch. 870, § 1, subd. (c).) The Legislature further explained: "A company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights. This practice is particularly problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes." (Stats. 2019, ch. 870, § 1, subd. (d).)[3]

---

[3] In *Espinoza v. Superior Court* (2022) 83 Cal.App.5th 761 (*Espinoza*), disapproved on other grounds in *Hohenshelt, supra*, 18 Cal.5th at page 349, the appellate court provided further background on the Legislature's intent: "The enacting legislation cited two opinions by the Ninth Circuit Court of Appeals, *Brown v. Dillard's, Inc.* (2005) 430 F.3d 1004 and *Sink v. Aden Enterprises, Inc.* (2003) 352 F.3d 1197, characterizing them as holding that 'an employer's refusal to participate in arbitration' or 'an employer's failure to pay arbitration fees' constituted 'a material breach' of the arbitration agreement." (*Id.* at p. 773.) The *Espinoza* court continued: "The legislation also quoted *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 for the proposition that '"when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any type of expense that the employee would not be required to bear if he or she were free to bring the action in court."' [Citation.] Senate Bill . . . 707 was intended to 'affirm' these three court decisions and establish 'that a company's failure to pay arbitration fees pursuant to a mandatory arbitration provision constitutes a breach of the arbitration

Section 1281.98, subdivision (a)(1) provides: "In an employment . . . arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required to continue the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee . . . to proceed with that arbitration as a result of the material breach."

Subdivision (a)(2) of section 1281.98 specifies: "The arbitration provider shall provide an invoice for any fees and costs required for the arbitration proceeding to continue to all of the parties to the arbitration. The invoice shall be provided in its entirety, shall state the full amount owed and the date that payment is due, and shall be sent to all parties by the same means on the same day. To avoid delay, absent an express provision in the arbitration agreement stating the number of days in which the parties to the arbitration must pay any required fees or costs, the arbitration provider shall issue all invoices to the parties as due upon receipt. Any extension of time for the due date shall be agreed upon by all parties. Once the invoice has been paid, the arbitration provider shall provide to all parties a document that reflects the date on which the invoice was paid."

---

agreement and allows the non-breaching party to bring a claim in court.'" (*Espinoza, supra*, 83 Cal.App.5th at pp. 773–774.)

8

## II.

### SBM MATERIALLY BREACHED THE ARBITRATION AGREEMENT BY FAILING TO TIMELY PAY ARBITRATION FEES

In this appeal, SBM does not dispute: (1) SBM was represented by the same counsel of record in both the trial court and arbitration proceedings; (2) JAMS provided SBM's counsel with an invoice for fees and costs SBM was required to pay for the arbitration proceeding to continue; (3) the fees and costs were due upon receipt of the invoice; (4) the invoice satisfied the requirements of subdivision (a)(2) of section 1281.98; (5) JAMS sent follow-up communications to SBM's counsel regarding the status of the due and owing payment on the invoice within the 30-day period of providing the invoice to counsel; and (6) SBM did not pay the invoice within 30 days of SBM's counsel's receipt of the invoice.

Instead, SBM argues it did not materially breach the arbitration agreement because section 1281.98, subdivision (a)(1) requires an ADR provider to serve an invoice directly on the party responsible for paying the fees and not the party's counsel and yet JAMS never served the invoice directly on SBM. Therefore, SBM further argues, section 1281.98, subdivision (a)(1)'s 30-day payment deadline was never triggered.

In support of its argument, SBM cites section 1281.98, subdivision (a)(2)'s requirement an ADR provider provide the invoice to all of the "parties to the arbitration." SBM contends because the CAA's section 1280, subdivision (h) defines the phrase "'[p]arty to the arbitration'" to "mean[] a party to the arbitration agreement," section 1281.98,

9

subdivision (a)(2) must be interpreted to require service of an invoice directly on a party itself.[4]

For the reasons we explain, we reject SBM's proffered interpretation of section 1281.98, subdivision (a)(2).

*A. Standard of Review*

"Ordinarily, a trial court's determination [as to whether] a party waived the right to arbitrate is subject to substantial evidence review. [Citation.] However, where the parties do not dispute the factual support for the trial court's ruling, but instead dispute the proper interpretation of section 1281.98, the appellate court's review is de novo." (*Doe v. Superior Court* (2023) 95 Cal.App.5th 346, 353, disapproved on other grounds in *Hohenshelt, supra*, 18 Cal.5th at p. 349.)

"'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes. [Citation.] We

---

[4] Section 1280, subdivision (h) provides in its entirety: "'Party to the arbitration' means a party to the arbitration agreement, including any of the following: [¶] (1) A party who seeks to arbitrate a controversy pursuant to the agreement. [¶] (2) A party against whom such arbitration is sought pursuant to the agreement. [¶] (3) A party who is made a party to the arbitration by order of the neutral arbitrator upon that party's application, upon the application of any other party to the arbitration, or upon the neutral arbitrator's own determination."

must harmonize the various parts of the enactments by considering them in the context of the statutory [framework] as a whole.'" (*Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 14.)

*B. The Trial Court Correctly Concluded the 30-day Period Under Section 1281.98 Was Triggered When JAMS Provided the Invoice to SBM's Counsel*

As pointed out by the trial court in its minute order granting Springs's motion to vacate, SBM's proposed interpretation of section 1281.98 to require the arbitrator to send the invoice to a represented party directly, rather than to that party's counsel, "is contrary to the notion that when a party to litigation has counsel, it is counsel, not the client, who is served with papers in the case." (See Cal. Rules of Court, rule 1.21(a) ["Whenever a document is required to be served on a party, the service must be made on the party's attorney if the party is represented"].)[5]

In *Flannery v. Prentice* (2001) 26 Cal.4th 572, 578, the California Supreme Court explained: "In the countless procedural statutes in which the term 'party' is used, it is commonly understood to refer to either the actual litigant or the litigant's attorney of record. [Citations.] Since that is the ordinary import of the term, that is the meaning we must ascribe to it when used in [a statute], unless the Legislature has clearly indicated a contrary intent." (See *McDowell v. Watson* (1997) 59 Cal.App.4th 1155, 1164 [the term "'party'" in procedural statutes is "commonly understood to refer to either the actual litigant or the litigant's attorney of record"].)

---

[5] The trial court also accurately noted in *Gallo*, the ADR provider sent its bills to counsel for both parties and not to the defendant directly (*Gallo, supra*, 81 Cal.App.5th at pp. 631–632), yet the appellate court enforced section 1281.98 and affirmed the trial court's order vacating its earlier order compelling arbitration for failure to timely pay fees (*Gallo, supra*, at p. 630).

11

Section 1280, subdivision (h)'s definition of "party to the arbitration," clarifies which individuals or entities are permitted to participate in an arbitration, but it does not constitute a clear expression of legislative intent to deviate from the well-established understanding that a procedural statute's reference to a "party" refers to that party or its counsel if the party is represented. SBM does not cite a single case, relevant legislative history, or any other form of legal authority, suggesting otherwise.

In support of its construction of the phrase "parties to the arbitration" in section 1281.98, subdivision (a)(2), SBM argues "when a specific section in the CAA covers both parties *and* their counsel, that section expressly references the parties *and* then separately references their 'counsel' or their 'lawyer.'" SBM only cites sections 1282.4 and 1281.9 in support of its argument, as both of those statutes separately reference a party to the arbitration and the party's attorney. But those two code sections have good reason to specifically mention counsel. Section 1282.4 establishes a party's right to be represented by an attorney in arbitration proceedings. That code section does not otherwise prescribe litigation activities counsel might perform on behalf of a client, such as receiving service of documents. That section 1282.4 specifically references counsel is therefore irrelevant to the interpretation of the phrase "parties to the arbitration" in section 1281.98, subdivision (a)(2).

Section 1281.9 is also inapposite. As explained by the trial court in its minute order vacating arbitration proceedings: "That statute addresses an arbitrator's required disclosures of potential conflicts of interest, and in that context, both clients and attorneys are separately relevant to potential conflicts and it is logical for the statute to include both." Section 1281.9 does

not speak to much less contradict rule 1.21(a) of the California Rules of Court establishing that serving on counsel equals serving the client.

In any event, if we were to so narrowly interpret the phrase "parties to the arbitration" in section 1281.98, subdivision (a)(2) to mean literally and only an actual party, even one represented by counsel of record, we would need to consistently apply that interpretation of the phrase whenever it appears in the CAA. Such an exercise quickly leads to absurd results as the CAA includes several procedural statutes which direct the performance of various litigation activities typically performed by counsel of represented parties but counsel is not specifically mentioned in those statutes. (See § 1281.6 ["In the absence of an agreed method, . . . the court, *on petition of a party to the arbitration* agreement, shall appoint the arbitrator" (italics added)]; § 1282.2, subd. (b) ["On *request of a party to the arbitration* for good cause, . . . the neutral arbitrator may postpone the hearing to a time not later than the date fixed by the agreement for making the award" (italics added)]; § 1282.2, subd. (d) ["*On request of any party to the arbitration*, the testimony of witnesses shall be given under oath" (italics added)]; § 1283 ["*On application of a party to the arbitration*, the neutral arbitrator may order the deposition of a witness to be taken for use as evidence and not for discovery if the witness cannot be compelled to attend the hearing" (italics added)]; § 1283.2 ["The fee and mileage of a witness subpoenaed *upon the application of a party to the arbitration* shall be paid by such party" (italics added)]; § 1284 ["The arbitrators, *upon written application of a party to the arbitration*, may correct the award upon any of the grounds set forth in subdivisions (a) and (c) of Section 1286.6 . . . ." (italics added)].)

In addition, so narrowly construing the phrase "party to the arbitration" as it appears in such procedural statutes would arguably prevent

13

counsel from acting on a party's behalf in such instances, in contravention of the party's statutory right to be represented by counsel in an arbitration proceeding. (See § 1282.4, subd. (a) ["A party to the arbitration has the right to be represented by an attorney at any proceeding or hearing in arbitration under this title"].) Nothing in the CAA supports such a construction.

We therefore conclude JAMS's provision of the deposit request to SBM's counsel for payment of due and owing fees triggered the 30-day period provided in section 1281.98, subdivision (a). As SBM indisputably failed to pay the amount due within that time period, the trial court did not err by concluding SBM had materially breached the parties' arbitration agreement within the meaning of section 1281.98.

## III.

### THE FAA DOES NOT PREEMPT SECTION 1281.98 WHEN PROPERLY CONSTRUED, BUT WE REMAND FOR THE TRIAL COURT TO CONSIDER WHETHER SBM'S FAILURE TO TIMELY PAY ARBITRATION FEES MAY BE EXCUSED

For the first time on appeal,[6] SBM argues the FAA preempts section 1281.98 and, therefore, the trial court's order vacating its prior order compelling arbitration must be reversed. Appellate courts were divided on the issue whether the FAA preempted section 1281.98 (see *Sanders v. Superior Court* (2025) 110 Cal.App.5th 1304, 1322, review granted May 6, 2025, S291437, disapproved on other grounds in *Hohenshelt, supra*, 18 Cal.5th at p. 349) until the California Supreme Court issued its decision in *Hohenshelt, supra*, 18 Cal.5th 310 in which the court held: "[S]ection 1281.98, properly construed, is not preempted by the FAA. Although section 1281.98

---

[6] We acknowledge a party may raise a constitutional issue like preemption for the first time on appeal. (*ReadyLink Healthcare, Inc. v. Jones* (2012) 210 Cal.App.4th 1166, 1175.)

14

has been interpreted by various Courts of Appeal to impose an inflexible and sometimes harsh rule resulting in loss of arbitral rights, we reject that rigid construction and instead conclude that *the statute does not abrogate the long-standing principle, established by statute and common law, that one party's nonperformance of an obligation automatically extinguishes the other party's contractual duties only when nonperformance is willful, grossly negligent, or fraudulent.* As explained below, the Legislature sought to deter companies and employers from engaging in *strategic* nonpayment of arbitration fees; we find no indication that it intended to strip companies and employers of their contractual right to arbitration where nonpayment of fees results from a good faith mistake, inadvertence, or other excusable neglect." (*Id.* at p. 323, first italics added.)

The Supreme Court observed the appellate court in *Hohenshelt* correctly concluded section 1281.98 is not preempted by the FAA when that statute is properly construed. (*Hohenshelt, supra,* 18 Cal.5th at p. 349.) The Supreme Court, however, reversed and remanded with the following instructions: "[I]n light of our clarification that section 1281.98 does not displace background statutes permitting relief to a breaching party in certain circumstances, we reverse the Court of Appeal's order 'direct[ing] the trial court to vacate its order denying the motion to lift the stay of litigation and to enter an order lifting the stay.' [Citation.] We direct the Court of Appeal to remand the matter to the trial court for consideration of whether [the employer] may be excused for its failure to timely pay arbitration fees, such that the stay of litigation should not be lifted and the parties should be returned to arbitration, and whether the delay resulted in compensable harm to [the claimant]." (*Ibid.*)

15

To the extent Springs urges us in his supplemental letter brief to conclude, as a matter of law, SBM's "failure to timely pay arbitration fees was not the result of mistake or excusable neglect, but rather a deliberate, strategic, and grossly negligent course of conduct intended to delay the arbitration process," we decline to do so. We remand to the trial court to determine in the first instance whether SBM's failure to timely pay arbitration fees should be excused pursuant to the holding and reasoning of *Hohenshelt*.

## DISPOSITION

The order is reversed and the matter is remanded to the trial court with instructions that the court consider whether SBM may be excused for its failure to timely pay arbitration fees, "such that the stay of litigation should not be lifted and the parties should be returned to arbitration, and whether the delay resulted in compensable harm" to Springs. (*Hohenshelt, supra,* 18 Cal.5th at p. 349.) In the interests of justice, neither party shall recover costs on appeal.


MOTOIKE, ACTING P. J.

WE CONCUR:


MOORE, J.


DELANEY, J.